07 CV 5671

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFFREY M. COOLEY, Individually and On Behalf of All Others Similarly Situated, | ) Civ. Action No. <br> ) <br> ) CLASS ACTION COMPLAINT FOR |
| Plaintiff, | ) VIOLATIONS OF FEDERAL SECURITIES <br> ) LAWS <br> ) |
| vs. | ) JURY TRIAL DEMANDED <br> ) |
| STERLING FINANCIAL CORP., J. ROGER MOYER JR, J. BRADLEY SCOVILL and TITO L. LIMA, | ) <br> ) <br> ) <br> ) |
| Defendants. | ) <br> ) |

RECEIVED
JUN 14 2007
U.S.D.C. S.D.N.Y.
CASHIERS

Plaintiff has alleged the following based upon the investigation of plaintiff's counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Sterling Financial Corp. ("Sterling Financial" or the "Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company, and plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.  This is a federal securities class action on behalf of purchasers of the common stock of Sterling Financial between April 27, 2004 and May 25, 2007, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.  The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC") [17 C.F.R. § 240.10b-5].

3.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1337 and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

4.  Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b), as many of the acts and practices complained of herein occurred in substantial part in this District.

5.  In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

1

## PARTIES

6. Plaintiff Jeffrey M. Cooley, as set forth in the accompanying certification, incorporated by reference herein, purchased the common stock of Sterling Financial at artificially inflated prices during the Class Period and has been damaged thereby.

7. Defendant Sterling Financial is a Pennsylvania corporation with its principal place of business located at 101 North Pointe Blvd., Lancaster, PA 17601. The Company, through its subsidiaries, provides banking and financial services to individuals and businesses in the United States. It operates in four segments: Community Banking and Related Services, Leasing, Commercial Finance, and Trust and Investment Services.

8. (a) Defendant J. Roger Moyer Jr. ("Moyer") is, and was at all relevant times, Sterling Financial's Chief Executive Officer ("CEO") and President.

(b) Defendant J. Bradley Scovill ("Scovill") was Sterling Financial's Senior Executive Vice President, Chief Financial Officer ("CFO"), and Treasurer until May 23, 2005. Defendant Scovill has been the Chief Revenue Officer of Sterling Financial since February 2006. He is the Cashier of Bank of Lancaster County N.A., the parent of Equipment Finance LLC ("Equipment Finance"), and also its Executive Vice President and Chief Financial Officer.

(c) Defendant Tito L. Lima ("Lima") succeeded Defendant Scovill as Sterling Financial's CFO and Treasurer.

(d) Defendants Moyer, Scovill, and Lima are collectively referred to herein as the "Individual Defendants."

9. Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about the Company's business, operations, operational trends, financial statements, markets, and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets, and forecasts, and

2

reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof, and via reports and other information provided to them in connection therewith.

10. It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading, and incomplete information conveyed in the Company's public filings, press releases, and other publications as alleged herein are the collective actions of the narrowly-defined group of defendants identified above. Each of the above officers of Sterling Financial, by virtue of their high-level positions with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels, and was privy to confidential proprietary information concerning the Company and its business, operations, growth, financial statements, and financial condition, as alleged herein. Said defendants were involved in drafting, producing, reviewing, and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

11. As officers and controlling persons of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and was, and is, traded on the NASDAQ Stock Market ("NASDAQ"), and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate prompt, accurate, and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings, and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded common stock would be based upon truthful and accurate information. The Individual Defendants'

misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

12. The Individual Defendants participated in the drafting, preparation, and/or approval of the various public and shareholder and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with Sterling Financial, each of the Individual Defendants had access to the adverse undisclosed information about Sterling Financial's business prospects, financial condition, and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts, issued or adopted by the Company, rendered the positive representations made by or about Sterling Financial and its business materially false and misleading.

13. The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases, and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

14. Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Sterling Financial common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Sterling Financial's business, operations,

management, and the intrinsic value of Sterling Financial common stock; (ii) allowed the Company to use its artificially inflated stock to acquire The Pennsylvania State Banking Company and Bay Net Financial; (iii) enabled defendants Moyer and Scovill to sell over 60,000 of their personally-held shares of Sterling Financial stock at artificially inflated prices during the Class Period for gross proceeds in excess of $1.3 million; and (iv) caused plaintiff and other members of the Class to purchase Sterling Financial's common stock at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

15. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the common stock of Sterling Financial between April 27, 2004 and May 25, 2007, inclusive ("the Class"), and who were damaged thereby. Excluded from the Class are defendants; the officers and directors of the Company, at all relevant times; members of their immediate families and their legal representatives, heirs, successors or assigns; and any entity in which defendants have or had a controlling interest.

16. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Sterling Financial common shares were actively traded on the NASDAQ. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Sterling Financial or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

17. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of the federal securities laws that is complained of herein.

18. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

19. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by defendants' acts as alleged herein;

(b) whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations, and management of Sterling Financial; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

20. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

21. Defendant Sterling Financial describes itself as a "diversified financial services company based in Lancaster, Pa." The Company operates in four segments: Community Banking and Related Services, Leasing, Commercial Finance, and Trust and Investment Services.

22.     According to the Company's latest annual report filed with the SEC, "Equipment Finance LLC, a wholly-owned subsidiary of Bank of Lancaster County, represents the sole affiliate within the Commercial Finance segment. Equipment Finance specializes in financing forestry and land-clearing equipment for the soft wood pulp business utilized primarily in the paper industry through more than 150 equipment dealer locations ranging from Maine to Florida. At December 31, 2006, the Commercial Finance segment represented approximately 9% of Sterling's consolidated assets, and contributed approximately 41% of Sterling's net income from continuing operations for the year ended December 31, 2006."

23.     Throughout the Class Period, defendants issued numerous positive statements and filed quarterly reports with the SEC which described the Company's increasing financial performance. These statements were materially false and misleading because they failed to disclose and misrepresented the following adverse facts, among others: (i) that Sterling Financial was materially overstating its financial results by artificially inflating revenues in its Commercial Finance division, which represented approximately 41% of Sterling Financial's net income. As detailed herein, Sterling Financial now expects to incur a charge of at least $145 million to $165 million and will be restating its financial statements for 2004 to 2006 and possibly for earlier periods; (ii) that the Company lacked adequate internal controls and was therefore unable to ascertain its true financial condition; and (iii) that as a result of the foregoing, the values of the Company's net income and earnings were materially overstated at all relevant times.

24.     On April 30, 2007, the Company announced that it expected to be restating its financial statements for the years 2004 through 2006 as a result of "irregularities in certain financing contracts" at Equipment Finance. Moreover, the Company announced that two senior executives of Equipment Finance had been placed on leave. Upon this announcement, shares of the

Company's stock fell $4.07 per share or almost 20% to close at $16.65 per share, on heavy trading volume.

25.   Then, on May 24, 2007, Sterling Financial announced that the "previously reported irregularities" at Equipment Finance were a "direct result of collusion" by certain Equipment Finance employees. As a result, the Company expects to record a cumulative after-tax charge to its December 31, 2006 financial statements of at least $145 million to $165 million. Moreover, five Equipment Finance employees were terminated, including the Chief Operating Officer and Executive Vice President. In response to this announcement, on the next trading day, shares of the Company's stock fell $6.19 per share, or almost 40%, to close at $9.97 share, on extremely heavy trading volume.

26.   Prior to disclosing these adverse facts to the investing public, the Company was able to use its artificially inflated stock to acquire The Pennsylvania State Banking Company and Bay Net Financial, and the Company allowed Defendants Moyer and Scovill to sell over 60,000 shares of their personally-held shares at artificially inflated prices during the Class Period for gross proceeds in excess of $1.3 million.

### Materially False and Misleading Statements Made During the Class Period

27.   The Class Period begins on April 27, 2004. On that date, Sterling Financial issued a press release announcing its financial results for the first quarter of 2004, the period ended March 31, 2004. For the quarter, the Company reported net income of $7.629 million and diluted earnings per share of $0.35. Defendant Moyer, commenting on the results, stated, in pertinent part:

> Coming off an outstanding year in 2003, it is encouraging to begin 2004 with such rock-solid performance. Market conditions in the first quarter provided challenges, but Sterling continued our trend of improving on virtually every aspect of our business. The sustained performance of Sterling reflects the dedication and commitment of our people, who focus intently on meeting the needs of our customers and our shareholders.

8

28. Sterling Financial's financial results for the first quarter of 2004, the period ended March 31, 2004, were reported in the Company's Report on Form 10-Q filed with the SEC on or about May 10, 2004, which was signed by defendants Moyer and Scovill. With regard to the Company's internal controls, the quarterly report stated, in pertinent part:

> At the end of the period covered by this quarterly report, Sterling conducted an evaluation of the effectiveness of the design and operation of Sterling's disclosure controls and procedures, as required by Rule 13a-15 under the Exchange Act. This evaluation was carried out under the supervision and with the participation of Sterling's management, including its Chief Executive Officer and Chief Financial Officer. Based upon that evaluation, the Chief Executive Officer and Chief Financial Officer concluded that Sterling's controls and procedures are effective. There have been no changes in Sterling's internal control over financial reporting that materially affected, or are reasonably likely to materially affect, internal control over financial reporting.

29. On June 14, 2004, the Company issued a press release announcing that it had acquired The Pennsylvania State Banking Company. The press release stated, in pertinent part:

> Under the terms of the definitive agreement, each shareholder of The Pennsylvania State Banking Company may elect to receive either $22 per share in cash or exchange their shares for Sterling Financial shares, or a combination thereof. The exchange ratio will be .8300 shares of Sterling Financial common stock for each share of The Pennsylvania State Banking Company stock unless Sterling Financial's average price per share, as determined during the 20-day period prior to closing, is above $26.51. Above $26.51, the exchange ratio will decline on a prorated basis to a minimum of .7239 shares of Sterling Financial stock for each share of The Pennsylvania State Banking Company stock if Sterling Financial's average price per share is $30.39 or higher.

30. On July 27, 2004, Sterling Financial issued a press release announcing its financial results for the second quarter of 2004, the period ended June 30, 2004. For the quarter, the Company reported net income of $8.216 million and diluted earnings per share of $0.37. Defendant Moyer, commenting on the results, stated, in pertinent part:

> We continue to be pleased with our strategy of offering a diversified array of financial service products to our customers that can be seen in our 2004 results.

9

> For the quarter ended June 30, 2004, noninterest income increased 17.9% over 2003's results. The results of our newest fee-based affiliates, including StoudtAdvisors, Church Capital Management, and Bainbridge Securities, have contributed greatly to our revenue stream. Net interest income has also increased 12.0%, as our specialty and commercial lenders are generating nice volume growth as well.
>
> While we have been diversifying our financial services product offerings, we have also been focused on the expansion of our banking activities. Our emerging markets, including Berks County, Pennsylvania, Carroll County, Maryland, and New Castle County, Delaware, also continue to reap the benefit of market disruption, and have contributed to our asset growth. We are very excited about our newest emerging market, Pennsylvania's Capital Region, with our announced agreement with The Pennsylvania State Banking Company. 2004 has been very exciting for Sterling's employees and shareholders, and we look forward to continuing this momentum.

31.  Sterling Financial's financial results for the second quarter of 2004, the period ended June 30, 2004, were reported in the Company's Report on Form 10-Q filed with the SEC on or about August 9, 2004, which was signed by Defendants Moyer and Scovill.

32.  On October 26, 2004, Sterling Financial issued a press release announcing its financial results for the third quarter of 2004, the period ended September 30, 2004. For the quarter, the Company reported net income of $8.500 million and diluted earnings per share of $0.38. Defendant Moyer, commenting on the results, stated, in pertinent part:

> 2004 has been an interesting year for Sterling Financial Corporation, as it feels like two distinct initiatives have been running simultaneously. The task of documenting our compliance with Section 404 of Sarbanes-Oxley has been felt throughout the organization. On the plus side, it has resulted in renewed evaluation of our internal control processes, and in some cases, identified areas where efficiencies could be gained. Concurrently, we have been able to grow our company through organic growth, as evidenced by strong loan volumes, and the results of our fee-based affiliates. Sterling's ability to handle these initiatives simultaneously is a tribute to our team of employees who enjoy the challenges of growing a company, while being respectful of the ever changing regulatory environment that exists today.

10

33. Sterling Financial's financial results for the third quarter of 2004, the period ended September 30, 2004, were reported in the Company's Report on Form 10-Q filed with the SEC on or about November 9, 2004, which was signed by Defendants Moyer and Scovill.

34. On January 25, 2005, Sterling Financial issued a press release announcing its financial results for the fourth quarter and year end of 2004, the period ended December 31, 2004. For the quarter, the Company reported net income of $8.984 million and diluted earnings per share of $0.40. Defendant Moyer, commenting on the results, stated, in pertinent part:

> 2004 has been an outstanding year for Sterling Financial Corporation, as we produced another year of record earnings. We continued to diversify our financial services product offerings while expanding our banking activities. The results of our newest fee-based affiliates, including StoudtAdvisors, Church Capital Management and Bainbridge Securities were significant contributors to our 16 percent increase in fee income. Net interest income also increased 13 percent, as our specialty and commercial lenders generated strong volume growth as well.
>
> Our team of over 1,000 employees should be complimented for their efforts in 2004. In addition to completing the acquisitions of StoudtAdvisors and Pennsylvania State Bank and entering into the New Castle, Del., market, they were able to dedicate substantial resources on documenting our compliance with Section 404 of Sarbanes-Oxley. Despite these dynamic factors, we were able to improve on our positive earnings momentum. 2004 has been a rewarding year for Sterling's shareholders and employees, and we look forward to continued success in 2005.

35. Sterling Financial's financial results for the fourth quarter and year end of 2004, the period ended December 31, 2004, were reported in the Company's Report on Form 10-K filed with the SEC on or about March 30, 2005, which was signed by Defendants Moyer and Scovill, among others. With regard to Equipment Finance, the annual report stated, in pertinent part:

> Commercial Finance
>
> Equipment Finance LLC, which was acquired by Sterling in February 2002, represents the sole affiliate within the commercial finance segment. Equipment Finance specializes in financing forestry and land-clearing

equipment through more than 150 equipment dealer locations ranging from Maine to Florida.

At December 31, 2004, the Commercial Finance segment represented approximately 8% of Sterling's consolidated assets, and contributed approximately 36% of Sterling's net income for the year ended December 31, 2004. Major revenue sources include net interest income. Expenses include personnel and support charges. Since the acquisition of Equipment Finance in 2002, finance receivables have grown from $81 million to $194 million, and represent one of Sterling's fastest growing segments.

\* \* \*

The specialty lenders, including Equipment Finance and Town & Country Leasing, have continued their momentum of growing finance receivables and finance leases, achieving 30.3% growth in 2004. A primary reason for Equipment Finance's decision to join Sterling was the funding that Sterling could provide in order to increase its market share. Since Sterling's acquisition in February 2002, Equipment Finance has been able to capture new business and increase its finance receivables outstanding.

36. On April 26, 2005, Sterling Financial issued a press release announcing its financial results for the first quarter of 2005, the period ended March 31, 2005. For the quarter, the Company reported net income of $9.279 million and diluted earnings per share of $0.316. The Company also announced a 5-for-4 stock split, to be effected in the form of a 25 percent stock dividend. Defendant Moyer, commenting on the results, stated, in pertinent part:

Sterling continues to benefit from the alignment of its banking and financial services affiliates to offer a full menu of financial services options in established and growth markets. The progress that we are making is attributable to the energy and focus of Sterling's 1,100 employees. Their dedication to providing personal and professional financial services differentiates Sterling brands from others in the markets that we serve. Their commitment to delivering positive results for Sterling shareholders is evident as we are able to declare our second stock split in two years.

37. Sterling Financial's financial results for the first quarter of 2005, the period ended March 31, 2005, were reported in the Company's Report on Form 10-Q filed with the SEC on or

about May 10, 2005, which was signed by Defendants Moyer and Scovill. With regard to the Company's internal controls, the quarterly report stated, in pertinent part:

> At the end of the period covered by this quarterly report on Form 10-Q, Sterling conducted an evaluation of the effectiveness of the design and operation of Sterling's disclosure controls and procedures, as required by Rule 13a-15 under the Exchange Act. This evaluation was carried out under the supervision and with the participation of Sterling's management, including its Chief Executive Officer and Chief Financial Officer. Based upon that evaluation, the Chief Executive Officer and Chief Financial Officer concluded that Sterling's controls and procedures are effective. There have been no changes in Sterling's internal controls over financial reporting that materially affected, or are reasonably likely to materially affect, internal controls over financial reporting, during the last fiscal quarter.

38.     On July 26, 2005, Sterling Financial issued a press release announcing its financial results for the second quarter of 2005, the period ended June 30, 2005. For the quarter, the Company reported net income of $9.684 million and diluted earnings per share of $0.331. Defendant Moyer, commenting on the results, stated, in pertinent part:

> The second quarter 2005 is a continuation of the momentum that Sterling continues to experience. Sterling's strength stems from our diverse business lines and revenue streams, serving high-growth markets, a strong capital position to fund growth, excellent credit quality, engaged employees and experienced leadership.

39.     Sterling Financial's financial results for the second quarter of 2005, the period ended June 30, 2005, were reported in the Company's Report on Form 10-Q filed with the SEC on or about August 9, 2005, which was signed by Defendants Moyer and Lima.

40.     On October 25, 2005, Sterling Financial issued a press release announcing its financial results for the third quarter of 2005, the period ended September 30, 2005. For the quarter, the Company reported net income of $10.086 million and diluted earnings per share of $0.344. Defendant Moyer, commenting on the results, stated, in pertinent part:

> We are pleased with another quarter of record earnings and achieving our desired growth goals. Our growth in existing and new markets has led to solid performances in both our Banking Services Group and Financial Services Group affiliates.
>
> Despite some recent compression, a trend that the industry has been experiencing for the past several quarters, our net interest margin continues to exceed our peer group. Given Sterling's diversified product offering, pressure in our net interest margin should be lessened by growth in the earnings contributions of our financial services affiliates.

41. Sterling Financial's financial results for the third quarter of 2005, the period ended September 30, 2005, were reported in the Company's Report on Form 10-Q filed with the SEC on or about November 9, 2005, which was signed by Defendants Moyer and Lima.

42. On January 24, 2006, Sterling Financial issued a press release announcing its financial results for the fourth quarter and year end of 2005, the period ended December 31, 2005. For the quarter, the Company reported net income of $10.2 million and diluted earnings per share of $0.35. Defendant Moyer, commenting on the results, stated, in pertinent part:

> Our record performance during 2005 is the result of our focus on growth in existing markets, broadening our product mix and entering new markets. We are especially pleased with loan and deposit growth, an increase in net interest income and our strong credit quality.

43. Sterling Financial's financial results for the fourth quarter and year end of 2005, the period ended December 31, 2005, were reported in the Company's Report on Form 10-K filed with the SEC on or about March 15, 2006, which was signed by Defendants Moyer and Lima, among others. With regard to Equipment Finance, the annual report stated, in pertinent part:

Commercial Finance

> Equipment Finance LLC, a wholly owned subsidiary of Bank of Lancaster County, represents the sole affiliate within the Commercial Finance segment. Equipment Finance specializes in financing forestry and land-clearing

equipment through more than 150 equipment dealer locations, ranging from Maine to Florida.

At December 31, 2005, the Commercial Finance segment represented approximately 9% of Sterling's consolidated assets, and contributed approximately 38% of Sterling's net income for the year ended December 31, 2005. The major revenue source is net interest income. Operating expenses include personnel and support charges. Since the acquisition of Equipment Finance in 2002, finance receivables have grown from $81 million to $237 million.

\* \* \*

The specialty lenders, including Equipment Finance and Town & Country Leasing, have continued their momentum of growing finance receivables and finance leases, achieving a combined 19.0% growth in 2005. A primary reason for Equipment Finance's decision to join Sterling was the funding that Sterling could provide in order to increase its market share. Since Sterling's acquisition in February 2002, Equipment Finance has been able to capture new business and increase its finance receivables outstanding.

44.     On March 31, 2006, the Company issued a press release announcing that it entered into a definitive agreement to acquire Bay Net Financial. The press release stated, in pertinent part:

The total value of the transaction is estimated at $22.8 million, although the actual value will depend on several factors including the price of Sterling Financial stock. Under the terms of the definitive agreement, each shareholder of Bay Net Financial may elect to receive cash, or to exchange their shares for Sterling Financial shares, or a combination of both. The amount of final per share consideration is based on a formula that is determined by the average per share value of Sterling Financial stock during the 20-day period ending 11 days prior to closing. The exchange ratio is expected to be .8802, assuming an average Sterling share price of $21 during the 20day period. It will increase on a pro-rata basis to a maximum of .9728 at an average Sterling share price of $19, and will decrease to a minimum of .8036 at an average Sterling share price of $23 during the 20-day period. The consideration is subject to election and allocation procedures designed to ensure that the cash portion is not less than 40 percent and not more than 45 percent of the dollar value of the merger consideration. The specific pricing calculations are subject to the terms of the definitive agreement.

45.     On April 25, 2006, Sterling Financial issued a press release announcing its financial results for the first quarter of 2006, the period ended March 31, 2006. For the quarter, the Company