reported net income of $10.2 million and diluted earnings per share of $0.35. Defendant Moyer, commenting on the results, stated, in pertinent part:

> Building on the progress that we achieved during 2005 and previous years, we are pleased to begin 2006 with a strong first quarter - one highlighted by continued growth in revenues, and the alignment of our Financial Services Group with our Banking Services Group. Our strength is attributable to our consistency in performance and deliberate execution of a strategy that focuses on the successes of our customers, our shareholders and our employees.

46.    Sterling Financial's financial results for the first quarter of 2006, the period ended March 31, 2006, were reported in the Company's Report on Form 10-Q filed with the SEC on or about May 10, 2006, which was signed by defendants Moyer and Lima. With regard to the Company's internal controls, the quarterly report stated, in pertinent part:

> At the end of the period covered by this quarterly report on Form 10-Q, Sterling conducted an evaluation of the effectiveness of the design and operation of Sterling's disclosure controls and procedures, as required by Rule 13a-15 under the Exchange Act. This evaluation was carried out under the supervision and with the participation of Sterling's management, including its Chief Executive Officer and Chief Financial Officer. Based upon that evaluation, the Chief Executive Officer and Chief Financial Officer concluded that Sterling's controls and procedures are effective. There have been no changes in Sterling's internal controls over financial reporting that materially affected, or are reasonably likely to materially affect, internal controls over financial reporting, during the last fiscal quarter.

47.    On July 25, 2006, Sterling Financial issued a press release announcing its financial results for the second quarter of 2006, the period ended June 30, 2006. For the quarter, the Company reported net income of $10.3 million and diluted earnings per share of $0.35. Defendant Moyer, commenting on the results, stated, in pertinent part:

> We delivered another quarter of solid performance. While we have experienced some modest compression in our net interest margin, our company is well positioned to meet a challenging interest rate environment as we continue to focus on revenue growth by delivering a broad portfolio of

16

complementary financial services through our banks and financial services group companies.

48.    Sterling Financial's financial results for the second quarter of 2006, the period ended June 30, 2006, were reported in the Company's Report on Form 10-Q filed with the SEC on or about August 8, 2006, which was signed by Defendants Moyer and Lima.

49.    On October 24, 2006, Sterling Financial issued a press release announcing its financial results for the third quarter of 2006, the period ended September 30, 2006.    For the quarter, the Company reported net income of $5.6 million or $0.19 per diluted share.    Defendant Moyer, commenting on the results, stated, in pertinent part:

> While we did absorb a non-cash impairment charge which had a negative impact on earnings, our company's fundamentals remain strong.  Our customer acquisition strategy continued to strengthen as we saw growth in both our loans and deposits. Referrals among our diverse lines of business also are helping us drive revenue.

50.    Sterling Financial's financial results for the third quarter of 2006, the period ended September 30, 2006, were reported in the Company's Report on Form 10-Q filed with the SEC on or about November 8, 2006, which was signed by Defendants Moyer and Lima.

51.    On January 23, 2007, Sterling Financial issued a press release announcing its financial results for the fourth quarter and year end of 2006, the period ended December 31, 2006. For the quarter, the Company reported net income of $10.4 million or $0.35 per diluted share. Defendant Moyer, commenting on the results, stated, in pertinent part:

> 2006 was a challenging year for our company and for the financial services industry. I am pleased that we continued to advance our core customer strategies and, as a result, were able to turn in a solid financial performance, considering the interest rate environment and competitive pressures in our markets.

52.    Sterling Financial's financial results for the fourth quarter and year end of 2006, the period ended December 31, 2006, were reported in the Company's Report on Form 10-K filed with the SEC on or about March 16, 2007, which was signed by Defendants Moyer and Lima, among others. With regard to Equipment Finance, the annual report stated, in pertinent part:

Commercial Finance

Equipment Finance LLC, a wholly-owned subsidiary of Bank of Lancaster County, represents the sole affiliate within the Commercial Finance segment. Equipment Finance specializes in financing forestry and land-clearing equipment for the soft wood pulp business utilized primarily in the paper industry through more than 150 equipment dealer locations ranging from Maine to Florida.

At December 31, 2006, the Commercial Finance segment represented approximately 9% of Sterling's consolidated assets, and contributed approximately 41% of Sterling's net income from continuing operations for the year ended December 31, 2006. The major revenue source is net interest income. Operating expenses include personnel and support charges.

\*        \*        \*

Other operating income totaled $5.8 million for the year ended December 31, 2006, compared to $5.0 million in 2005. The 15.5% growth in 2006 was primarily a result of gains recognized on the sale of finance receivables and leases at Sterling's affiliates, Equipment Finance, LLC and Town and Country Leasing, LLC.

53.    The statements referenced above in ¶¶27-30, 32, 34-38, 40, 42-47, 49, and 51-52 were each materially false and misleading when made because they failed to disclose and/or misrepresented the following adverse facts, among others:

(a)    that Sterling Financial was materially overstating its financial results by artificially inflating revenues in its Commercial Finance division, which represented approximately 41% of Sterling Financial's net income. As detailed herein, Sterling Financial now expects to incur

18

a charge of at least $145 million to $165 million and will be restating its financial statements for 2004 to 2006 and possibly for earlier periods;

(b)    that the Company lacked adequate internal controls and was therefore unable to ascertain its true financial condition; and

(c)    that as a result of the foregoing, the values of the Company's net income and earnings were materially overstated at all relevant times.

### The Truth Begins to Emerge

54.    On April 19, 2006, the Company issued a press release announcing that it will be postponing the release of its first quarter earnings for the quarter ended March 31, 2007. In that regard, the press release stated, in pertinent part:

> Sterling's management has received information suggesting irregularities related to certain financing contracts in one of its financial services group companies, Equipment Finance LLC (EFI). EFI provides commercial financing for the soft pulp logging and land-clearing industries, primarily in the southeastern United States.

> Management moved immediately to notify the Audit Committee and Board of Directors about this information, and the Audit Committee engaged nationally recognized, expert accountants and legal counsel to conduct an independent investigation.

> "As you would expect, Sterling is taking this matter very seriously," said J. Roger Moyer, Jr., president and chief executive officer of Sterling Financial Corporation. "We are committing all necessary resources to complete the investigation in a thorough, timely and professional manner and to take any remedial steps necessary."

> At this time, Sterling has not determined the financial impact of any irregularities. Further investigation is required for a final determination of earnings for the first quarter, which may also make it necessary to delay the filing of the first quarter Form 10-Q. New dates will be announced as soon as they become available.

19

55.    On April 30, 2007, the Company issued a press release announcing that, as a result of information obtained from an internal investigation, it expected to be restating financial statements for the years 2004 through 2006. In that regard, the press release continued, in pertinent part, as follows:

On April 19th, Sterling Financial Corporation announced that it had received information suggesting irregularities in certain financing contracts in one of its financial services group companies, Equipment Finance LLC (EFI). EFI provides commercial financing for the soft pulp logging and land-clearing industries, primarily in the southeastern United States. Accordingly, Sterling postponed the release of earnings for the quarter ended March 31, 2007.

Taking this matter very seriously, management moved immediately to notify the Audit Committee and Board of Directors about this information, and the Audit Committee engaged nationally recognized, expert accountants and legal counsel to conduct an independent investigation. Sterling is committing all necessary resources to complete the investigation in a thorough, timely and professional manner and to take any corrective steps necessary.

Based on preliminary information from the investigation and management's own review, Sterling's Board of Directors concluded on April 29, 2007, that the Corporation's previously issued financial statements, the reports on the audited financial statements and related internal controls issued by its independent registered public accounting firm, and all earnings releases issued for 2004 through 2006, should no longer be relied upon due to the expected material impact of these irregularities. Sterling expects to restate or amend these financial statements once the extent of the impact is known, which may require the Corporation and its affiliates to raise additional capital. The impact of the irregularities may also be material for years prior to 2004, depending on the results of the ongoing investigation.

In connection with the investigation, two senior executives of EFI have been placed on leave.

Sterling is postponing its 2007 annual shareholder meeting, originally scheduled for May 8, 2007, and the Corporation does not expect that it will be able to file its Form 10-Q by the due date of May 10th.

"I want to assure shareholders, customers and the public that Sterling is moving aggressively to take corrective action on the issues that have emerged during this investigation. We are taking steps to strengthen EFI's management structure and

20

internal control processes immediately," said J. Roger Moyer, Jr., president and chief executive officer of Sterling Financial Corporation.

Sterling has implemented changes in EFI's management structure, installing an acting Chief Operating Officer. The Chief Executive Officer of EFI has voluntarily relinquished his role as President, CEO, and EFI Board member; however, he will be available to assist the company, in a non-management role, at the request of management. In addition, EFI's Board of Managers has been augmented by the addition of two new members. Internal control processes and procedures are being reviewed and enhanced.

"We understand that our shareholders, customers, employees and communities may have questions. We ask for your patience, and continued loyalty, as we complete our investigation," added Moyer.

Sterling and its affiliates are committed to delivering excellent relationship-based service, quality and care for our clients and customers, a proud tradition that is the hallmark of Sterling.

56.    Upon this announcement, shares of the Company's stock fell $4.07 per share or almost 20% to close at $16.65 per share, on heavy trading volume.

57.    Then, on May 24, 2007, Sterling Financial issued a press release announcing that "previously reported irregularities" at Equipment Finance were a "direct result of collusion" by certain Equipment Finance employees.  In that regard, the press release continued, in pertinent part, as follows:

> Sterling's investigation to date has revealed evidence of a sophisticated loan scheme, orchestrated deliberately by certain EFI officers and employees over an extended period of time, to conceal credit delinquencies, falsify financing contracts and related documents, and subvert Sterling's established internal controls and reporting systems. The scheme was able to avoid detection until recently due to the depth and breadth of the collusion. In other words, employees at different seniority levels and functional areas were apparently involved. These deceptive activities were limited to EFI and no customer accounts in Sterling's banks or other affiliates were involved.

> The Board of Directors, upon the recommendation of management through the Disclosure Committee, and with the concurrence of the Audit Committee, concluded on May 23 that Sterling will be required to record, under U.S. generally

accepted accounting principles, a material impairment of certain assets of EFI. These assets include EFI financing contracts, interest associated with those contracts, and potentially goodwill attributable to EFI. While Sterling has not determined the annual periods in which the impairment occurred, Sterling currently expects to record a cumulative after-tax charge to the December 31, 2006 financial statements of approximately $145 million to $165 million, based upon the results of the investigation's preliminary findings. However, at this point in the investigation, Sterling has not determined the final financial impact, including any potential recoveries, such as insurance and collateral.

Sterling is working closely with its regulators and all appropriate federal authorities on the ongoing investigation.

"Our investigation has now revealed evidence that Sterling and its shareholders were subjected to a significant, sophisticated loan scheme, specifically designed to deceive and avoid detection," said J. Roger Moyer, Jr., president and chief executive officer of Sterling Financial Corporation. "Our priority now is to address the problem and continue serving our customers. Decisive actions have been taken to reinforce oversight and centralize operational management at EFI."

As a result of our investigation, Sterling implemented immediate changes in EFI's management structure. Five EFI employees have now been terminated, including the Chief Operating Officer and Executive Vice President, and Sterling installed an acting Chief Operating Officer. Further, a special collections team has been deployed to maximize recoveries from the impaired contracts.

Sterling moved to centralize management and control of financial, credit and information systems previously managed by EFI. In addition, the Promontory Financial Group, an international financial and regulatory consulting firm with world class expertise in bank control mechanisms, headed by former Comptroller of the Currency Eugene Ludwig, has been engaged to evaluate controls across all of Sterling and make recommendations.

EFI is a wholly owned subsidiary of Sterling's affiliate bank, Bank of Lancaster County, N.A. (the Bank). To address the capital issues resulting from the financial irregularities at EFI, Sterling and the Bank have developed a plan to restore the Bank's capital.

"Having taken immediate action, we are now focused on developing a long- term plan," Moyer added. "Sterling, through its affiliates, has a successful history tracing back more than 150 years, and we're currently developing a strategy for the future to rebuild shareholder value."

The capital restoration plan includes consolidating four of Sterling's affiliate banks in order to maximize capital. Effective at 12:01am on May 25, 2007, and based on

22

approval of the Office of the Comptroller of the Currency, Bank of Hanover and Trust Company, Pennsylvania State Bank, Bay First Bank, N.A., and Bank of Lancaster County, N.A., will all become divisions of BLC Bank, N.A. All branches will continue to operate under their current names, with the same personnel and the same types of products and services that our customers know and rely on. The plan also includes halting the payment of dividends to Sterling Financial Corporation shareholders for a period of time, and exploring all strategic options, including raising additional capital, the sale of certain assets and/or business units, and entering into a business combination with a strategic partner. Keefe, Bruyette & Woods has been retained to assist Sterling in exploring these options.

Moyer continued, "This has certainly been a difficult time for all of us at Sterling, but among our organization's greatest assets are the more than 1,100 hardworking employees, strong franchises and market position, and loyal customers. All of our banking and other offices continue to provide the same exceptional service that customers have relied on for over 150 years."

58.    In response to this announcement, on the next trading day, shares of the Company's stock fell $6.19 per share, or almost 40%, to close at $9.97 share, on extremely heavy trading volume.

59.    The market for Sterling Financial's common stock was open, well-developed, and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, Sterling Financial's common stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Sterling Financial common stock relying upon the integrity of the market price of Sterling Financial's common stock and market information relating to Sterling Financial, and have been damaged thereby.

60.    During the Class Period, defendants materially misled the investing public, thereby inflating the price of Sterling Financial's common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and

23

misleading in that they failed to disclose material adverse information and misrepresented the truth

about the Company, its business, and its operations, as alleged herein.

61.    At all relevant times, the material misrepresentations and omissions particularized in

this Complaint directly or proximately caused or were a substantial contributing cause of the

damages sustained by plaintiff and other members of the Class.  As described herein, during the

Class Period, defendants made or caused to be made a series of materially false or misleading

statements about Sterling Financial's business, prospects, and operations.   These material

misstatements and omissions had the cause and effect of creating in the market an unrealistically

positive assessment of Sterling Financial and its business, prospects, and operations, thus causing

the Company's common stock to be overvalued and artificially inflated at all relevant times.

Defendants' materially false and misleading statements during the Class Period resulted in plaintiff

and other members of the Class purchasing the Company's common stock at artificially inflated

prices, thus causing the damages complained of herein.

## ADDITIONAL SCIENTER ALLEGATIONS

62.    As alleged herein, defendants acted with scienter in that defendants knew that the

public documents and statements issued or disseminated in the name of the Company were

materially false and misleading; knew that such statements or documents would be issued or

disseminated to the investing public; and knowingly and substantially participated or acquiesced in

the issuance or dissemination of such statements or documents as primary violations of the federal

securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of

information reflecting the true facts regarding Sterling Financial, their control over, and/or receipt

and/or modification of Sterling Financial's allegedly materially misleading misstatements and/or

24

their associations with the Company which made them privy to confidential proprietary information concerning Sterling Financial, participated in the fraudulent scheme alleged herein.

63. Defendants were further motivated to continue this scheme in order to allow Defendants Moyer and Scovill to sell over 60,000 shares of their personally-held shares at artificially inflated prices during the Class Period for gross proceeds in excess of $1.3 million. The chart below details Defendants Moyer and Scovill's trades in Sterling Financial stock:

| Defendant | Date | Shares | Price | Proceeds |
|-----------|------|--------|-------|----------|
| J. MOYER | 5/4/2005 | 5,913 | $21.64 | $127,947 |
| | 6/15/2005 | 200 | $21.25 | $ 4,250 |
| | 12/13/2005 | 13,983 | $21.68 | $303,151 |
| | 1/29/2007 | 10,000 | $22.34 | $223,400 |
| | | 30,096 | | $658,748 |
| | | | | |
| J. SCOVILL | 9/17/2004 | 7,500 | $21.32 | $159,900 |
| | 9/9/2005 | 13,000 | $21.21 | $275,730 |
| | 1/30/2007 | 10,000 | $22.36 | $223,600 |
| | | 30,500 | | $659,230 |
| | | | | |
| | Total: | 60,596 | | $1,317,978 |

## LOSS CAUSATION/ECONOMIC LOSS

64. During the Class Period, as detailed herein, defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated Sterling Financial's common stock price and operated as a fraud or deceit on Class Period purchasers of Sterling Financial's common stock by failing to disclose that its financial results were materially overstated because officers at Equipment Finance concealed credit delinquencies and falsified financial contracts and other documents. When defendants' prior misrepresentations and fraudulent conduct were disclosed and became apparent to the market, Sterling Financial's common stock fell precipitously as the prior artificial inflation came out of Sterling Financial's common stock price. As a result of

their purchases of Sterling Financial's common stock during the Class Period, Plaintiff and the other Class members suffered economic loss, *i.e.*, damages, under the federal securities laws.

65.    By allowing this scheme to occur at one of its subsidiaries, defendants presented a misleading picture of Sterling Financial's business and prospects. Thus, instead of truthfully disclosing during the Class Period the true risks that Sterling Financial was exposed to, defendants caused Sterling Financial to conceal the true amount of reserves.

66.    Defendants' false and misleading statements had the intended effect and caused Sterling Financial's common stock to trade at artificially inflated levels throughout the Class Period, reaching as high as $24.312 per share on December 1, 2004.

67.    As a direct result of defendants' disclosures on April 30, 2007 and May 24, 2007, Sterling Financial's common stock price fell precipitously. These drops removed the inflation from the price of Sterling Financial's securities, causing real economic loss to investors who had purchased the Company's securities during the Class Period.

68.    The more than 50% decline in the price of Sterling Financial's common stock after these disclosures came to light was a direct result of the nature and extent of defendants' fraud finally being revealed to investors and the market. The timing and magnitude of Sterling Financial's common stock price declines negates any inference that the loss suffered by plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors, or Company-specific facts unrelated to the defendants' fraudulent conduct. The economic loss, *i.e.*, damages, suffered by plaintiff and the other Class members was a direct result of defendants' fraudulent scheme to artificially inflate the prices of Sterling Financial's securities and the subsequent significant decline in the value of Sterling Financial's securities when defendants' prior misrepresentations and other fraudulent conduct were revealed.

**Applicability of Presumption of Reliance:**
**Fraud On the Market Doctrine**

69.     At all relevant times, the market for Sterling Financial's common stock was an efficient market for the following reasons, among others:

(a)     Sterling Financial's stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     as a regulated issuer, Sterling Financial filed periodic public reports with the SEC and the NASDAQ;

(c)     Sterling Financial regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     Sterling Financial was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

70.     As a result of the foregoing, the market for Sterling Financial's common stock promptly digested current information regarding Sterling Financial from all publicly available sources and reflected such information in Sterling Financial's stock price. Under these circumstances, all purchasers of Sterling Financial's common stock during the Class Period suffered

27

similar injury through their purchase of Sterling Financial's common stock at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

71.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Sterling Financial who knew that those statements were false when made.

## COUNT I

### Violation of Section 10(b) of
### the Exchange Act Against and Rule 10b-5
### Promulgated Thereunder Against All Defendants

72.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

73.    During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public regarding Sterling Financial's business, operations, management and the intrinsic value of Sterling Financial common stock; (ii) allow the Company to use its artificially inflated stock in

28

order to acquire The Pennsylvania State Banking Company and Bay Net Financial; (iii) enable

Defendants Moyer and Scovill to sell over 60,000 of their personally-held shares of Sterling

Financial stock at artificially inflated prices during the Class Period for gross proceeds in excess of

$1.3 million; and (iv) cause plaintiff and other members of the Class to purchase Sterling

Financial's common stock at artificially inflated prices. In furtherance of this unlawful scheme,

plan, and course of conduct, defendants, and each of them, took the actions set forth herein.

74.    Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue

statements of material fact and/or omitted to state material facts necessary to make the statements

not misleading; and (c) engaged in acts, practices, and a course of business which operated as a

fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain

artificially high market prices for Sterling Financial's common stock in violation of Section 10(b)

of the Exchange Act and Rule 10b-5. All defendants are sued either as primary participants in the

wrongful and illegal conduct charged herein or as controlling persons as alleged below.

75.    Defendants, individually and in concert, directly and indirectly, by the use, means or

instrumentalities of interstate commerce and/or of the mails, engaged and participated in a

continuous course of conduct to conceal adverse material information about the business,

operations, and future prospects of Sterling Financial as specified herein.

76.    These defendants employed devices, schemes, and artifices to defraud, while in

possession of material adverse non-public information and engaged in acts, practices, and a course

of conduct as alleged herein in an effort to assure investors of Sterling Financial's value and

performance and continued substantial growth, which included the making of, or the participation in

the making of, untrue statements of material facts and omitting to state material facts necessary in

order to make the statements made about Sterling Financial and its business operations and future

prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices, and a course of business which operated as a fraud and deceit upon the purchasers of Sterling Financial common stock during the Class Period.

77.    Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

78.    The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.    Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Sterling Financial's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its common stock. As demonstrated by defendants' overstatements and misstatements of the Company's

business, operations, and earnings throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

79.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Sterling Financial's common stock was artificially inflated during the Class Period.  In ignorance of the fact that market prices of Sterling Financial's publicly-traded common stock were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, plaintiff and the other members of the Class acquired Sterling Financial common stock during the Class Period at artificially high prices and were damaged thereby.

80.    At the time of said misrepresentations and omissions, plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had plaintiff and the other members of the Class and the marketplace known the truth regarding Sterling Financial's financial results, which were not disclosed by defendants, plaintiff and other members of the Class would not have purchased or otherwise acquired their Sterling Financial common stock, or, if they had acquired such common stock during the Class Period, they would not have done so at the artificially inflated prices which they paid.

81.    By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

82.     As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

## COUNT II

### Violation of Section 20(a) of the Exchange Act Against the Individual Defendants

83.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

84.     The Individual Defendants acted as controlling persons of Sterling Financial within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in, and/or awareness of the Company's operations, and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

85.     In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control

32

or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

86.    As set forth above, Sterling Financial and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' wrongful conduct, plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

**WHEREFORE,** plaintiff prays for relief and judgment, as follows:

A.    Determining that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying the Class as defined above;

B.    Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.    Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D. Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:  June 14, 2007

                                               COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.

Catherine A. Torell (CT-0905)
150 East 52nd Street
Thirtieth Floor
New York, New York  10022
Telephone:     (212) 838-7797
Facsimile:      (212) 838-7745

Steven J. Toll
S. Douglas Bunch
1100 New York Avenue, NW
Suite 500, West Tower
Washington, D.C.  20005
Telephone:     (202) 408-4600
Facsimile:      (202) 408-4699

*Attorneys for Plaintiff*

34

CERTIFICATION OF PLAINTIFF
PURSUANT TO FEDERAL SECURITIES LAWS

I, __JEFFREY M. COOLEY__ , ("Plaintiff") declare, as to the claims asserted under the federal securities laws, that:

1.    I have reviewed a class action complaint asserting securities claims against STERLING FINANCIAL CORP. (SLFI) and wish to join as a plaintiff retaining Cohen, Milstein, Hausfeld & Toll, P.L.L.C. as my counsel.

2.    Plaintiff did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.    My transactions in Sterling Financial Corp. (SLFI) during the Class Period of April 27, 2004 through May 25, 2007 were as follows:

| DATE | TRANSACTION (buy/sell) | NO. OF SHARES | PRICE PER SHARE |
|------|------------------------|---------------|-----------------|
| 5/2/2007 | Buy | 200 | $16.15 |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

5.    During the three years prior to the date of this Certificate, Plaintiff has not sought to serve or served as a representative party for a class in any action under the federal securities laws except as follows:

6.    Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing true and correct.

Executed this __12__ Day of __JUNE__ , 2007.

_____